Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6733 | **DATE** | 10/5/2001 |
| **CASE TITLE** | Knoll Pharmaceutical Co. vs. Automobile Insurance Co. of Hartford, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order. Plaintiff's motion for summary judgment [23-1] is granted. Judgment is entered in favor of the plaintiff and against the defendants.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | **OCT 09 2001** | |
| | Notified counsel by telephone. | | date docketed | 83 |
| ✓ | Docketing to mail notices. | | *EB* | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| RO | courtroom deputy's initials | 01 OCT -5 PM 3: 43 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KNOLL PHARMACEUTICAL CO., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 00 C 6733 |
| v. ) | |
| ) | Judge Ruben Castillo |
| AUTOMOBILE INSURANCE ) | |
| CO. OF HARTFORD, NATIONAL ) | |
| UNION FIRE INSURANCE CO. OF ) | |
| PITTSBURGH, PA and ROYAL ) | |
| INSURANCE CO. OF AMERICA, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Knoll Pharmaceutical Company ("Knoll") filed this diversity lawsuit, seeking a declaration that Automobile Insurance Company of Hartford ("Automobile"), National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union") and Royal Insurance Company of America ("Royal")(collectively "Defendant Insurers") owed a duty to defend Knoll in the underlying case, *In re Synthroid Mktg. Litig.*, 110 F. Supp. 2d 676 (N.D. Ill. 2000). On July 13, 2001, we partially granted Knoll's motion for judgment on the pleadings and denied Defendant Insurers' motions for judgment on the pleadings. (R. 60.) Further briefing was required to adjudicate the present issue, whether Defendant Insurers' policies transferred as a matter of law to Knoll. This motion is being treated as Knoll's motion for summary judgment. For the reasons set forth below, Knoll's motion for summary judgment is granted. (R. 23-1.)

## RELEVANT FACTS

We will assume familiarity with our prior opinion in this case, *Knoll Pharm. Co. v. Auto. Ins. Co. of Hartford, Nat'l Union Fire Ins. Co. of Pittsburgh, PA and Royal Ins. Co. of Am.*, 152

F. Supp. 2d 1026 (N.D. Ill. 2001) ("*Knoll I*"), and will not needlessly repeat the facts not relevant to this motion.

Automobile issued Boots USA three insurance policies effective from 1989 to 1992. Royal issued Boots USA an insurance policy effective from 1992 to 1993. National Union issued Boots USA two insurance policies effective from September 1992 to December 1995. *Id.* at 1031. Although the substantive text of the policies contains identical language, the specific parties named under the policies ("named insureds") vary. Coverage is provided to all parties listed in the policy as either named insured or additional insured. The policies, however, only grant the authority to transfer rights or cancel coverage to the first named insured. Boots Company PLC ("Boots PLC") was neither a named insured nor an additional insured party in the policies at issue.[1] Furthermore, each policy contains a clause requiring the first named insured to obtain the written consent of the insurer in order to transfer the rights and duties under the policy. (R. 65, Auto.'s Mem. at 2; R. 64, Nat'l Union's Mem. at 3; R. 66, Royal's Mem. at 3.)

Boots USA and Knoll combined into one entity through two transactions. First, in March 1995, Boots PLC sold various assets to Basfin Corporation ("Basfin") through an asset purchase agreement.[2] In this initial asset purchase agreement, Boots PLC sold all of the shares of Boots USA, as well as the Business Plant and Machinery, Business Stocks and the Business Goodwill, to Basfin. The sale of Boots USA's shares included all rights attached to or accruing to these

---

[1] Boots PLC, the English parent company, wholly owned Boots USA as well as other companies, including Boots Pharmaceuticals Limited, Boots Pharma EA., and Boots Pharmaceuticals B.V. Several of these companies, including Boots USA, have their own subsidiaries to which they are the parent. (R. 69, Pl.'s Reply Mem., App. B., Sched. 2.)

[2] Basfin's parent company, BASF plc, purchased additional foreign companies from Boots PLC. As such, the two companies executed an umbrella master agreement. (R. 69, Pl.'s Reply Mem., App. E.) The specific agreement governing the transfer of Boots USA and its subsidiaries to Basfin, however, is the relevant agreement for our purposes.

shares and provided for the name change to Knoll Pharmaceutical Company-B. Inc.[3] In addition, the asset purchase agreement contained specific provisions to guide the transfer of the seller's contracts. Such contracts were defined as:

> All the contracts and engagements relating exclusively to the Business or relating in part to the Business (but then only to the extent that the same do so relate) current at Completion to which the Seller is a party or the benefit of which is held in trust for or has been assigned to it but excluding: (i) all policies of insurance, past and present, relating to any aspect of the Business.

(R. 69, Pl.'s Reply Mem., App. B at 11.) The asset purchase agreement defined the "seller" as Boots PLC.

The second transaction combining Boots USA with Knoll Pharmaceutical Company was the April 1995 statutory merger of the two entities. (*Id.*, App. F, Certificate of Merger.) After the merger, consumers filed several lawsuits, mostly class action, against Knoll regarding the sale and marketing of the prescription drug Synthroid between 1990 and 1997. The present case arose when Defendant Insurers denied that they had a duty to defend Knoll under their insurance policies. In *Knoll I*, we granted Knoll's motion for judgment on the pleadings, finding that Defendant Insurers had a duty to defend Knoll because the allegations corresponded to and arose out of the covered offenses. We required further briefing, however, on the issue of whether the insurance policies transferred from Boots USA to Knoll through the transactions described above. In order to allow for the inclusion of materials outside the pleadings, we transformed Knoll's motion for judgment on the pleadings to one for summary judgment. Presently before this Court is Knoll's motion for summary judgment on the transferability of the policy rights.

---

[3] Despite this name change, we will continue to use the name "Boots USA" for clarity and continuity.

3

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue for trial exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, the nonmovant must "come forward with specific facts showing that there is a genuine issue for trial." *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). It is not, however, the task of this Court to "scour the record" in search of a genuine issue, for we rely on the nonmoving party to identify "with reasonable particularity" the evidence that militates against summary judgment. *Richard v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995).

## ANALYSIS

### I. Transferability Through the Asset Purchase Agreement

Knoll maintains that the rights and duties under the insurance policies were unaffected by the initial asset purchase agreement that transferred the shares of Boots USA from Boots PLC to Basfin. (R. 69, Pl.'s Reply Mem. at 7.) Therefore, Knoll contends that the provisions in the agreement referring to the transfer of contractual obligations and liabilities are irrelevant to this matter and that the analysis should proceed to whether the insurance policies transferred through the subsequent merger with Knoll.

Knoll specifically argues that the initial asset purchase agreement did not affect the

4

ownership of the insurance policies because: (1) the parent company, Boots PLC, was not a named party to the insurance policies; (2) Boots USA and its subsidiaries contracted for their own insurance policies; and (3) the asset purchase agreement transferred Boots USA in its entirety. (*Id.* at 6-7.) Therefore, Knoll asserts that, because the parent ownership did not affect the rights and duties under the insurance policies, the insurance agreements remained with the named parties through the asset purchase despite the change in ownership of the parent company.

Defendant Insurers contend that the insurance policies did not transfer to Knoll under the asset purchase agreement and therefore could not have been part of the assets transferred through the subsequent merger. First, they maintain that consent of the insurer is specifically required by the policies in order to transfer the policies' rights and duties, and they claim that this consent was not obtained. (R. 65, Auto.'s Mem. at 2; R. 64, Nat'l Union's Mem. at 3; R. 66, Royal's Mem. at 3.) Second, they argue that the policies were excluded from the initial asset transfer by the terms of the asset purchase agreement. (R. 79-1, Defs.' Sur-Reply at 5-6.) We disagree. We find that the relevant case law and the explicit language of the insurance policies and the asset purchase agreement support Knoll's position that the parent-level agreement transferring the shares of Boots USA did not affect the rights and duties of the policies because Boots PLC, the parent company, did not have the authority to transfer the policies.

### A. Language of the Insurance Policies

An insurance policy issued to a subsidiary does not automatically cover the parent company. Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 126:5 (3d ed., 2000). In order to be covered, the parent company must be named as an additional insured or there must be

5

written authorization to include the parent under the policy.[4] *Consol. Rail Corp. v. Liberty Mut. Ins. Co.*, 416 N.E.2d 758, 762 (Ill. App. Ct. 1981). In addition, an insurance contract must be interpreted to ascertain the intent of the parties. *Piasecki v. Liberty Life Assur. Co.*, 728 N.E.2d 71, 73 (Ill. App. Ct. 2000). The intention of the parties is evidenced by the words used in the insurance policies. *Gen. Accident Fire and Life Assur. Corp. v. Brown*, 181 N.E.2d 191, 195-96 (Ill. App. Ct. 1962) (relying on the use of the terms "insured" and "named insured" in a policy as evidence of the parties' intent to distinguish between the two terms; where "insured" was used, the court held that the parties were referring to both the named insured and any additional insureds, but where "named insured" was used, the court found that the parties intended to limit the clause to only the named insured).

The insurance policies at issue in this case demonstrate that Boots PLC is not a named party and that, as a result, it could not transfer the rights and duties under the policies to Basfin in the initial asset purchase agreement. The "named insured" in each of the policies is Boots USA, with additional insureds including Boots Pharmaceuticals, Inc., Boots Manufacturing, Inc. and Boots Laboratories. (R. 65, Auto.'s Mem. at 2; R. 64, Nat'l Union's Mem. at 3; R. 66, Royal's Mem., Ex. A.) Each of the policies includes a section titled, "who is insured," which states that the executive officers, directors, employees and shareholders are insured. While Boots PLC may have been a shareholder of the named insured, and therefore covered as an insured, the policies specifically limit the authority of non-named insureds.

According to the policies, only the "first named insured" is authorized to make changes in the terms of the policy, is responsible for the payment of all premiums and may cancel the policy.

---

[4] In *Knoll I*, we resolved the conflict of laws and held that Illinois law governs this case. *Knoll*, 152 F. Supp. 2d at 1032-34.

6

(R. 66, Royal's Mem., Ex. A.) Just as in *General Accident*, the instant policies' varying uses of the terms "insured," "named insured" and "first named insured" are evidence of an intent to limit the scope of the insureds' authority. Because the policies in this case specifically grant the authority to cancel or make changes in the policy to the first named insured, we find that the parties intended to exclude additional named insureds. These provisions indicate that Boots PLC had no authority to cancel or transfer the agreements, nor was it responsible for paying the insurance premiums. Thus, even if Boots PLC were found to be a covered insured, it still would not be authorized to transfer the rights under the policy because, according to the terms of the policy itself, it is not a named insured. As such, Boots PLC could not have transferred the rights and duties under the insurance policies.

Furthermore, each of Defendant Insurers' policies contains language requiring the named insured to gain consent of the insurer in order to transfer any rights and duties under the policy. (R. 65, Auto.'s Mem. at 2; R. 64, Nat'l Union's Mem. at 3; R. 66, Royal's Mem. at 3.) These provisions are evidence of the emphasis placed by Defendant Insurers on limiting coverage and authority to only those parties who are named in the policies. Defendant Insurers ask us to place emphasis on the consent-to-transfer requirement but to ignore the implication that any non-named party is not authorized to transfer rights under the policies. As such, the specific provisions cited by Defendant Insurers manifest their commitment to limit liability to the named parties. Boots PLC was not a named party and, therefore, it did not have the power to transfer the rights and duties under the insurance policies because these rights and duties were entirely under the control of Boots USA.[5] Hence, the transfer of parent-level ownership of Boots USA

---

[5] Defendant Insurers' assertion that the transferability of the insurance policies must be determined as a matter of contract law provides additional support for our finding that the asset purchase agreement did not affect any rights and duties under the policy. As a matter of contract

7

through the initial asset purchase agreement did not affect any rights and duties under Defendant Insurers' policies.

### B. Language of the Asset Purchase Agreement

The asset purchase agreement did not provide for, nor did it prohibit, the transfer of the insurance policies' rights and duties because the clauses that govern the transfer of contracts do not apply to Defendant Insurers' policies. According to the agreement, a contract must meet two requirements to fall under the scope of the term "contract" for the purposes of the agreement: (1) the seller must be a party; and (2) the contracts must relate exclusively or in part to the business. (R. 69, Pl.'s Reply Mem., App. B, Asset Transfer Agreement at 11.) The agreement names Boots PLC as the seller, but makes no mention of its subsidiary companies. (*Id.*) Thus, any contract to which Boots PLC was not a party is excluded from the scope of "contracts" provided for in the asset purchase agreement. In this case, because the insurance policies at issue were not addressed in the asset purchase agreement and because the seller was not a party to the insurance contracts, our inquiry into the transferability of such contracts may end.

Defendant Insurers contend that "contracts," as defined in the asset purchase agreement, include any contract relating to the business, and that these policies are included because they relate to the parent company's business. (R. 79-1, Defs.' Sur-Reply at 5.) We disagree. Defendants' argument ignores the key language in the agreement which limits the scope of the provision only to those contracts to which the seller is a party. (R. 69, Pl.'s Reply Mem., App. B, Asset Transfer Agreement at 11.) As explained above, although the contracts must relate to the business, it is clear from the language of the agreement that Boots PLC, the seller, must also be a

---

law, because Boots PLC was not a party to the contract, it could not transfer the rights through an asset purchase agreement. (R. 66, Royal's Mem. at 11.)

8

party. As such, Boots PLC was not authorized under the asset purchase agreement to transfer the rights and duties of Defendant Insurers' policies because this authority rested solely with Boots USA. Therefore, the rights and duties under the insurance policies were not transferred through the asset purchase agreement.[6]

## II. Transferability Through the Merger

Now that we have found that the asset purchase agreement did not affect the rights and duties under the insurance policies at issue, we proceed to examine whether these rights and duties were transferred to Knoll through the subsequent merger. Knoll contends that proof of a statutory merger is sufficient to establish that all rights and duties under the insurance policies transfer to the merged company. (R. 69, Pl.'s Reply Mem. at 18.) Defendant Insurers do not contest this claim, but instead base their transferability arguments on the initial asset purchase agreement, which we have already found to be inapplicable. (R. 79-1, Defs.' Sur-Reply at 1.)

According to Illinois law, a corporation that merges with another corporation assumes all obligations and liabilities of the latter corporation. *Gray v. Mundelein Coll.*, 695 N.E.2d 1379, 1388 (Ill. App. Ct. 1998); *Myers v. Putzmeister, Inc.*, 596 N.E.2d 754, 755 (Ill. App. Ct. 1992). In fact, the assumption of liabilities is often considered to be the distinguishing factor between a merger and an asset purchase agreement. *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420,

---

[6] Defendant Insurers maintain that the policies did not transfer as a matter of law to Knoll because the insured risk was not fixed at the time of transfer. They cite several cases to support their position that a change in risk precludes the transfer of the insurance policies. *See, e.g., Quemetco, Inc. v. Pac. Auto. Ins. Co.*, 29 Cal. Rptr. 2d 627 (Cal. Ct. App. 1994); *Red Arrow Prods. v. Employer's Ins. of Wausau*, 607 N.W.2d 294 (Wis. Ct. App. 2000). Their reliance on these cases, however, is misguided because the named parties to the policies in each case were also parties to the asset purchase agreement. Therefore, the insureds in these cases were authorized by the insurance policies to transfer the rights and duties under the policies. *See, e.g., Red Arrow*, 607 N.W.2d at 296. Here, because Boots PLC was the seller in the asset purchase agreement, but not a named insured, the rights and duties under the policies were not affected by the asset purchase agreement. Thus, there was no change in the risk to Defendant Insurers.

9

1425 (7th Cir. 1993) (applying Illinois law and finding that if, in a merger, liabilities were not acquired along with assets, the transaction would instead be a purchase agreement). Thus, once a merger is established, the successor corporation takes on the obligations and liabilities under the insurance policies.[7]

In the instant case, according to the language of the merger agreement, all liabilities, debts and obligations belonging to both Boots USA and Knoll were assumed by Knoll as if they had been originally contracted to by Knoll. (R. 69, Pl.'s Reply Mem., App. A, § 1.03.) As stated above, Defendant Insurers' policies were part of the liabilities, debts and obligations belonging to Boots USA. Therefore, because the combination of Boots USA with Knoll was a merger not resulting in an increase in risk to the insurer, the insurance policies transferred as a matter of law to Knoll.[8]

---

[7] Furthermore, a provision requiring the insurer's consent to transfer the rights and duties under a policy does not affect the transferability through a statutory merger. *Brunswick Corp. v. St. Paul Fire and Marine Ins. Co.*, 509 F. Supp. 750, 753 (E.D. Pa. 1981). Upon a merger, all rights and duties of the merging corporations are automatically vested in the surviving corporation and the surviving corporation essentially stands in the same position as the merged corporation prior to the merger. *Id.* The *Brunswick* court held that all liabilities and obligations transferred upon a merger, despite a specific clause in the policy prohibiting assignment without the insurer's consent, because the reason for the no-assignment clause was to protect the insurer against an increased risk. *Id.* at 753. The Court further found that there was no increased risk associated with the merger because the insurer would only be liable on those claims against the surviving corporation that arose out of the covered acts of the merged corporation. *Id. See, e.g. Imperial Enters., Inc. v. Fireman's Fund Ins. Co.*, 535 F.2d 287, 291 (5th Cir. 1976) (finding that when assignments are transferred as a matter of law there is no increased risk to the insurer, and that no-assignment clauses should not be enforced because the increase in risk is the reason for the clause); *Paxton v. Vierling Steel Co. v. Great Am. Ins. Co.*, 497 F. Supp. 573, 578 (D. Neb. 1980) (finding that, absent an increase in risk to the insurer, the court should not mechanically apply a no-assignment clause so as to forfeit coverage as a result of a transfer through a statutory merger). Here, similar to *Brunswick* and *Imperial Enterprises*, there is no increased risk associated with the statutory merger because Defendant Insurers are only liable on those claims against Knoll that arose out of the covered acts of Boots USA.

[8] Indeed, Defendant Royal actually concedes this finding by citing *Myers* for the proposition that liabilities are assumed by the successor corporation after a merger, but not after an asset purchase agreement. (R. 66, Royal's Mem. at 4.)

10

## III. Other Factual Matters

There are no other factual matters that preclude our determination that the insurance policies issued to Boots USA transferred as a matter of law through the statutory merger to Knoll. Defendant Insurers maintain that we must discover the fate of the other named insureds after the initial asset purchase agreement in order to determine whether there was an increase in risk to the insurers. (R. 65, Auto.'s Mem. at 10; R. 64, Nat'l Union's Mem. at 13; R. 66, Royal's Mem. at 8.) Defendant Insurers, however, ignore explicit clauses to the contrary in their own policies. Each of the insurance policies at issue separates the rights or duties of the individual named insureds. Specifically, the policies state that it applies, "as if each Named Insured were the only Named Insured." (R. 66, Royal's Mem., Ex. A.) Because each insured is entitled to separate and individual rights or duties under the policies, the status of one named insured does not affect the status of another. Thus, this Court does not need to discover the fate of the other named insureds because only the status of the specific named insured involved in this suit, Boots USA and its subsidiaries, is factually relevant.[9]

## CONCLUSION

For the foregoing reasons, Knoll's motion for summary judgment is granted. (R. 23-1.) The Clerk of the Court is directed to enter judgment, pursuant to Federal Rule of Civil Procedure 58, in favor of Knoll.

---

[9] Moreover, Defendant Royal's claim that this Court must discover whether a *de facto* merger occurred is meritless. (R. 66, Royal's Mem. at 9.) First, this case does not meet the rigorous standards for finding a *de facto* merger, *see Fenderson v. Athey Prods. Co.*, 581 N.E.2d 288, 290 (Ill. App. Ct. 1991), because there was no continuity of ownership in the asset purchase at issue here. Second, even if we found a *de facto* merger, summary judgment for Knoll would still be appropriate because Defendant Insurers' policies would have transferred *de facto* to Knoll.

11

ENTERED:

*[signature: Ruben Castillo]*

Judge Ruben Castillo
United States District Court

Dated: October 5, 2001