


# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6733 | **DATE** | 7/16/2002 |
| **CASE TITLE** | Knoll Pharmaceutical Co. vs. Automobile Insurance Co. of Hartford, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion for summary judgment on Count II of the complaint [121-1] is granted. Defendants' motion for summary judgment on Count III of the complaint [122-1] is granted. Plaintiff's motions for summary judgment on Count III are denied [119-1 and 120-1]. Judgment is entered in favor of Plaintiff Knoll Pharmaceutical Co. and against defendants Automobile Insurance Co. of Hartford and National Union Fire Insurance Co. Pittsburgh, PA in the amount of $49,888,990.00 plus prejudgment interest due on their respective insurance policy limits and pro-rata share of the defense costs from February 1, 2002 to July 16, 2002. This case is hereby dismissed with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | **Document Number** |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | JUL 17 2002 | | 151 |
| | Notified counsel by telephone. | | date docketed | | |
| ✓ | Docketing to mail notices. | | CDY | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| RO | courtroom deputy's initials | CLERK, U.S. DISTRICT COURT | date mailed notice | | |
| | | 02 JUL 16 PM 4:09 | | | |
| | | Date/time received in Central Clerk's Office | mailing deputy initials | | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| KNOLL PHARMACEUTICAL CO., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 00 C 6733 |
| v. ) | |
| ) | Judge Ruben Castillo |
| AUTOMOBILE INSURANCE ) | |
| CO. OF HARTFORD and NATIONAL ) | |
| UNION FIRE INSURANCE CO. OF ) | |
| PITTSBURGH, PA, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This insurance coverage case involves just over $50 million in disputed insurance policy liability limits, defense costs and prejudgment interest. We are now at the damages stage of this case, after writing two prior opinions on Automobile Insurance Company of Hartford ("Automobile"), National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union") and Royal Insurance Company of America's ("Royal") (collectively "Defendant Insurers") duty to defend Knoll Pharmaceutical Company ("Knoll") and the transfer of the insurance policies as a matter of law to Defendant Insurers. The instant opinion holds that the total award to Knoll from Automobile is $29,933,394.00 plus prejudgment interest from February 1, 2002 to July 16, 2002 – the date of this Court's order – and the total award to Knoll from National Union is $19,955,596.00 plus prejudgment interest from the February 1, 2002 to July 16, 2002 period.[1] *See supra* Analysis, Section I(E). The instant opinion rules on the parties'

---

[1] Royal is no longer a party to this case. On March 4, 2002, we granted Knoll and Royal's motion for entry of an agreed order of dismissal with prejudice. (*See* R. 141-1.) The Court, however, retains jurisdiction to enforce the terms of its settlement with Knoll. (*Id.*)

four outstanding motions and concludes this lawsuit.

Knoll filed this diversity lawsuit, seeking a declaration that Defendant Insurers owed a duty to defend Knoll in the underlying case, *In re Synthroid Marketing Litigation*, 110 F. Supp. 2d 676 (N.D. Ill. 2000). On July 13, 2001, we partially granted Knoll's motion for judgment on the pleadings and denied Defendant Insurers' motions for judgment on the pleadings. *Knoll Pharm. Co. v. Auto. Ins. Co. of Hartford, et al.*, 152 F. Supp. 2d 1026 (N.D. Ill. 2001) (*"Knoll I"*). On October 1, 2001, we granted Knoll's motion for summary judgment, finding that Defendant Insurers' policies transferred as a matter of law to Knoll. *Knoll Pharm. Co. v. Auto. Ins. Co. of Hartford, et al.*, 167 F. Supp. 2d 1004 (N.D. Ill. 2001) (*"Knoll II"*). Currently before the Court are Knoll's motion for summary judgment on Count II of the complaint (Breach of Contract) seeking money damages from Automobile and National Union, and Knoll's motions for summary judgment and Automobile and National Union's motion for summary judgment on Count III of the complaint (Violations of Section 155 of the Illinois Insurance Code). For the reasons set forth herein, Knoll's motion for summary judgment on Count II is granted, (R. 121-1), Automobile and National Union's motion for summary judgment on Count III is granted, (R. 122-1), and Knoll's motions for summary judgment on Count III are denied, (R. 119-1, against National Union; R. 120-1, against Automobile).

## RELEVANT FACTS[2]

Automobile issued three insurance policies to Knoll effective from April 1, 1989 through April 1, 1992. National Union issued two insurance policies to Knoll effective from September

---

[2] We will assume familiarity with our prior opinions in this case, *Knoll I* and *Knoll II*, and will not needlessly repeat the facts not relevant to the motions before us.

30, 1993 through December 1, 1995. Each policy requires that Automobile and National Union pay Knoll all sums – up to policy limits – that Knoll is legally obligated to pay as a result of personal or advertising injury claims filed against Knoll in the underlying *Synthroid Marketing* litigation, so long as the offense occurred during the pertinent policy period. Additionally, each policy requires that Automobile and National Union pay all costs, including attorney fees, incurred by Knoll in defending claims for which Automobile and National Union might incur a duty to indemnify, and that payment of these defense costs is not subject to policy limits. Knoll reached a preliminary settlement agreement resolving the underlying *Synthroid Marketing* litigation. After receiving that court's preliminary approval of the settlement, Knoll deposited $101,319,780.00 into a settlement fund account. Automobile and National Union did not contribute to the settlement fund, nor did they defend Knoll in the underlying *Synthroid Marketing* litigation.

Knoll employed a team of four national firms (Sonnenschein, Nath & Rosenthal; Pillsbury, Madison & Sutro; Baker & Botts; and Mayer, Brown & Platt) to defend itself in the two class action lawsuits formed from a consolidation of over seventy separate suits. Knoll's in-house legal staff, headed by Thomas Allman and Moira Brophy, collected defense invoices and forwarded them to their accounting department for payment from a Knoll account. It is undisputed that Knoll contemporaneously paid each of the invoices for which it seeks indemnification and that no other entity besides Knoll paid these defense costs. (R. 121-1, Pl.'s Mot. for Summ. J. on Count II, Ex. C.)

During the underlying *Synthroid Marketing* litigation, Knoll sent copies of the complaints that it received to Defendant Insurers, requesting a defense under the policies. Defendant

Insurers, however, refused to defend Knoll and never sought a declaratory judgment to determine whether such a duty existed. Rather, they maintained their positions that the claims submitted were not covered under the policies. The amount of time and investigation spent assessing their coverage obligations is disputed. As we determined in *Knoll I*, a duty to defend Knoll in the underlying suits did in fact exist. *Knoll I*, 152 F. Supp. 2d at 1029. We also determined, however, that Defendant Insurers' positions denying this duty were reasonable and that the issues presented in this defense were novel in Illinois. *See id.* at 1035-37. Presently before the Court are Knoll's motion for summary judgment seeking money damages from Automobile and National Union for breach of contract, and the parties' cross-motions for summary judgment regarding Knoll's request for Illinois Insurance Code Section 155 sanctions.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue for trial exists only when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, the nonmovant must "come forward with specific facts showing that there is a genuine issue for trial." *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). It is not, however, the task of this Court to "scour the record" in search of a genuine issue, for we rely on the nonmoving party to identify "with reasonable particularity" the evidence that militates against summary judgment. *Richard v. Combined Ins.*

4

*Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995).

**ANALYSIS**

## I. Count II - Breach of Contract

We have already determined that Automobile and National Union had a duty to defend Knoll in the underlying litigation and that they breached this duty. *Knoll I*, 152 F. Supp. 2d at 1029. Under Illinois law, when an insurance company breaches its duty to defend, the measure of the damages is the amount of the judgment against the insured up to the policy limits, the expenses incurred by the insured in defending the suit and additional damages traceable to the refusal to defend. *Chandler v. Doherty*, 702 N.E.2d 634, 640 (Ill. App. Ct. 1998).

### A. Automobile and National Union must indemnify Knoll up to their policy limits.

When interpreting insurance contracts, the purpose is to give effect to the parties' intent. *E. Trading Co. ex. rel. Amin v. Refco, Inc.*, No. 97 C 6815, 2001 WL 869626, at *3 (N.D. Ill. Aug. 1, 2001); *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1212 (Ill. 1992). When possible, the contract should be construed so that all provisions are given effect and are in harmony, making them consistent and workable. *Refco*, 2001 WL 869626, at *3; *Welborn v. Ill. Nat'l Cas. Co.*, 106 N.E.2d 142, 143 (Ill. App. Ct. 1952). In construing insurance contracts, courts should interpret them as complete documents, not isolated parts. *Weiss v. Bituminous Cas. Corp.*, 319 N.E.2d 491, 495 (Ill. 1994). If, however, a term in a policy is subject to more than one reasonable interpretation within the context in which it appears, it is ambiguous. *Outboard Marine*, 607 N.E.2d at 1217. Any ambiguities in an insurance contract are interpreted in favor of the insured. *Hurst-Rosche Eng'rs, Inc. v. Commercial Union Ins. Co.*, 51 F.3d 1336, 1342 (7th Cir. 1995). The insurer is the drafter of the policy and has the power to

5

make the language clear. *Id.* Furthermore, the parties' intent is to provide coverage to the insured, and any ambiguity jeopardizing this coverage should therefore be consistent with the insured's intent. *Id.* A court may not, however, create an ambiguity when the language is clear and unambiguous. *Id. See also Oak Park Trust & Sav. Bank v. Intercounty Title Co.*, 678 N.E.2d 723, 725 (Ill. App. Ct. 1997) (stating that courts may not distort the language to create ambiguity and rewrite policy). In the absence of an ambiguity, words in an insurance policy are given their plain, ordinary and popular meaning. *See Outboard Marine*, 607 N.E.2d at 1212.

The insurance policies at issue in this case provide in the declarations a liability limit of $1 million for personal and advertising injury for "any one person or organization subject to General Aggregate Limit of Liability" and a limit of $2 million as an aggregate limit of liability for each policy year.[3] (R. 121-1, Pl.'s Mot. for Summ. J. on Count II, Ex. B.) In the "Limits of Insurance" section of the policies, the carriers explain that: (1) the limits shown in the declarations are the most that will be paid regardless of the number of insureds, claims made, suits brought or persons/organizations making claims or bringing suits; (2) the General Aggregate Limit is the most that will be paid for the sum of damages under Coverage B (the pertinent coverage section); and (3) the personal and advertising injury limit is the most that will be paid under Coverage B for the sum of all damages due to personal and advertising injury

---

[3] Automobile and National Union's insurance policies contain identical language, except for inconsequential differences in the order of the language. *Knoll I*, 152 F. Supp. 2d at 1030-31. Automobile's policies provided coverage to Knoll for a three-year period (1989-1992), and therefore Automobile is subject to a $6 million policy limit and must indemnify Knoll for three-sixths of Knoll's defense costs. *See supra* Analysis, Section I(D-E). National Union's policies provided coverage to Knoll for a two-year period (1993-1995), and therefore National Union is subject to a $4 million policy limit and must indemnify Knoll for two-sixths of Knoll's defense costs. *See id.*

sustained by one person/organization. (*Id.*)

It is undisputed that the underlying *Synthroid Marketing* litigation was brought by more than one person/organization. *See Knoll I*, 152 F. Supp. 2d at 1030 (summarizing litigation). Knoll argues that the general aggregate limit of $2 million per policy year must apply because many persons/organizations were injured as a result of various advertisements and statements. Knoll further contends that its interpretation of the policy is reasonable and that it must be upheld because the policy language is ambiguous and subject to more than one reasonable interpretation. We agree with Knoll.

For Automobile and National Union's interpretation of the policy to be upheld and the limit of $1 million per policy year to apply, they must show that the policy is unambiguously read to apply the $1 million limit. On the other hand, if ambiguity exists and Knoll's interpretation is reasonable, the $2 million limit must apply because ambiguous language is construed in favor of the insured. Automobile and National Union argue that the language is clear and unambiguous "when it states that the limits of insurance shown in the declarations, which are one million dollars, is the most that National Union [and Automobile[4]] will pay regardless of the number of insureds, suits, or persons or organizations making claims or bringing suits." (R. 135-1, National Union's Opp'n on Count II at 11.) While this particular provision may be clear on its own, we note that contracts must be interpreted from an examination of the whole document and not from isolated parts. *See Weiss*, 319 N.E.2d at 495. Thus, when this provision is taken together with the two other provisions in the insurance policies addressing policy limits (the provision stating

---

[4] National Union's response on this issue was fully adopted by Automobile. (*See* R. 138-1, Automobile's Opp'n on Count II at 9.)

that "the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all 'personal injury' and all 'advertising injury' sustained by any one person or organization," and the provision stating that "[t]he General Aggregate is the most we will pay for the sum of damages under Coverage B"), the policy language is rendered ambiguous. (R. 121-1, Pl.'s Mot. for Summ. J. on Count II, Ex. B.) Indeed, the language may be reasonably construed to mean that – as Knoll contends – injuries sustained by one person/organization are subject to the Personal and Advertising Injury Limit, and injuries sustained by more than one person/organization are subject to the General Aggregate policy limit. Such an ambiguity gives the Court no option but to interpret the language in favor of Knoll. *Elcho*, 708 N.E.2d at 1130.[5]

## B. Automobile and National Union must indemnify Knoll for expenses incurred in defending the underlying *Synthroid Marketing* litigation.

Automobile and National Union refused to defend Knoll in the underlying litigation. We have previously ruled that they had a duty to defend Knoll. *Knoll I*, 152 F. Supp. 2d at 1029. Consequently, they are liable for reasonable expenses incurred by Knoll in defending the suit. *See Chandler*, 702 N.E.2d at 640. It is also undisputed that Knoll incurred total litigation

---

[5] Automobile and National Union also claim that the General Aggregate policy limit only applies when more than one person/organization bring suits alleging different occurrences based upon different factual situations, and that if there is either only one person/organization or only one occurrence, the $1 million limit applies. (R. 135-1, Nat'l Union's Opp'n on Count II at 12.) Automobile and National Union maintain that although more than one person/organization brought suits, there was only one occurrence. (*Id.*) This argument, however, is unavailing. We clearly find that there were two occurrences resulting in injury to the plaintiffs in the underlying suit (*i.e.,* the disparagement of another's product and the defamation of Dr. Dong). Additionally, the occurrence language that Automobile and National Union refer to only appears in the sections regarding bodily and property injury, and there is no mention of it in Coverage B, regarding personal and advertising injury. (R. 121-1, Pl.'s Mot. for Summ. J. on Count II, Ex. B.)

expenses of $39,404,740.00 in defending the underlying *Synthroid Marketing* litigation. (R. 121-1, Pl.'s Mot. for Summ. J. on Count II, Ex. C.)

In two recent cases, the Seventh Circuit has limited the scope of a court's inquiry regarding the award of attorney's fees pursuant to a private contract. *See Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 200 F.3d 518 (7th Cir. 1999) (holding that when determining attorney's fees resulting from a breach of contract, the standard is commercial reasonableness, which should be determined through the market, rather than a line-by-line analysis of attorney time); *Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp.*, 73 F.3d 150 (7th Cir. 1996) (same). The Seventh Circuit has held that the fact that the bills were paid strongly implies that they meet market standards. *See Balcor*, 73 F.3d at 153 (stating that "[t]he best evidence of the market value of legal services is what people pay for it. Indeed, this is not 'evidence' about market value; it is market value."). *Medcom* elaborated on the *Balcor* reasoning: "The fees in dispute here are not pie-in-the-sky numbers that one litigant seeks to collect from a stranger but would never dream of paying itself. These are bills that MHC actually paid in the ordinary course of its business." *Medcom*, 200 F.3d at 520. *Medcom* also notes that if the bills are paid at a time when ultimate recovery is uncertain – as they were in the instant case before the Court – reasonableness is further indicated. *Medcom*, 200 F.3d at 521. *See also Refco*, 2001 WL 869626, at *8 (stating reluctance to second-guess decisions as to what was necessary in this hard-fought, high-stakes case).

There is undisputed testimony from Deloitte and Touche that Knoll indeed incurred and paid all of the defense costs that they now request from Automobile and National Union. (R. 121-1, Pl.'s Mot. for Summ. J. on Count II, Ex. C.) We hold that this strongly implies

9

commercial reasonableness of the fees, especially in light of the fact that ultimate recovery of these fees was uncertain because Automobile and National Union repeatedly refused to pay. *See Medcom*, 200 F.3d at 520-21. (*See also* R. 121-1, Pl.'s Mot. for Summ. J. on Count II at 117 (testimony of Thomas Allman, Knoll's chief legal officer, stating that the rates were based upon "reasonable market rates and [Knoll] believed that those rates were competitive or reasonable within the framework of the jurisdictions and expertise in which they were functioning").)

*Medcom* indicates that while the fact that the bills were paid is the strongest indicator of reasonableness, the inquiry does not necessarily stop there, as courts must also look at the aggregate costs (not a line-by-line analysis) to ensure that they were reasonable in relation to the stakes of the case and in relation to the opposition's litigation strategy. *See Medcom*, 200 F.3d at 521. Automobile and National Union suggest that because Knoll paid more in attorney costs than the plaintiffs in the underlying suit, the fees were unreasonable. We are not convinced that this fact alone deems these fees unreasonable in light of the evidence that Knoll actually incurred and paid the fees at a time when recovery was uncertain and in light of the high stakes involved in this case. The underlying *Synthroid Marketing* litigation comprised over seventy suits in various jurisdictions until they were consolidated into two class action suits. *Knoll I*, 152 F. Supp. 2d at 1030. The consolidation did not make for a simple defense plan:

> Thereafter, the scope of the defense was expanded and became increasingly more complicated and difficult as Knoll needed to address the competing concerns of both the consumer plaintiffs and the third party payors in an effort to obtain a universal settlement while simultaneously preparing for trial on all fronts.

(R. 121-1, Pl.'s Mot. for Summ. J. on Count II at 6.) *Contra Zeidler v. A & W Rest., Inc.*, No. 99 C 2591, 2001 WL 561367, at *3 (N.D. Ill. May 21, 2001) (reducing fees to an amount roughly

commensurate with the stakes of the case and its lack of complexity when $250,000 was spent to defend a claim that was worth at most $300,000); *Kaiser v. MEPC Am. Props., Inc.*, 518 N.E.2d 424 (Ill. App. Ct. 1987) (this case is inconsistent with later Seventh Circuit cases (*Medcom; Balcor*) that have made clear that a line-by-line analysis is inappropriate in contract cases).

Applying the commercial reasonableness standard, we emphasize that Knoll has confirmed that it incurred and paid all of the $39,404,740.00 in requested defense costs through documentation prepared by Deloitte and Touche. (R. 121-1, Pl.'s Mot. for Summ. J. on Count II, Ex. C.) This in itself strongly implies reasonableness. Moreover, this complete and thorough documentation, taken together with the high stakes of the case and the other evidence presented, conclusively evinces that Knoll's defense costs resulting from Automobile and National Union's breaches of contract are commercially reasonable as a matter of law and must be awarded to Knoll pursuant to the fee schedule listed at the end of Section I of the analysis of this opinion.

### C. Automobile and National Union must pay Knoll prejudgment interest on sums awarded from the dates they became due.

Section 2 of the Illinois Interest Act states in pertinent part:

Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; on money lent or advanced for the use of another; on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance on money received to the use of another and retained without the owner's knowledge; and on money withheld by an unreasonable and vexatious delay of payment.

*See* 815 ILCS 205/2. The decision as to the award of prejudgment interest under Section 2 of the Illinois Interest Act is within the trial court's discretion. *See Langrange Mem'l Hosp. v. St. Paul Ins. Co.*, 740 N.E.2d 21, 30 (Ill. App. Ct. 2000).

An indemnity clause is designed to make the wronged party whole by putting it in the same position that it would have occupied had the other side kept its promise. *See Medcom*, 200 F.3d at 519. One kind of loss covered under this type of promise is the time-value of money. *Id.* If a wronged party is unable to use due money as litigation continues, it must be provided prejudgment interest. *Id.* Prejudgment interest, however, is awarded for amounts due on an instrument of writing only if the amount is liquidated or capable of easy calculation. *N.H. Ins. Co. v. Hanover Ins. Co.*, 696 N.E.2d 22, 28 (Ill. App. Ct. 1998). This principle governs even if the amount requires legal ascertainment to resolve issues when parties may reasonably differ. *Medcom*, 200 F.3d at 519. Furthermore, the existence of a good faith defense does not preclude recovery of interest. *Id.* Interest may be recovered from the time money becomes due under the policy or after the lapse of a reasonable time for paying the amount due. *Marcheschi v. Ill. Farmers Ins. Co.*, 698 N.E.2d 683, 689 (Ill. App. Ct. 1998).

Automobile and National Union rely on *Dallis*, where prejudgment interest amounts were found to be neither liquidated nor easily calculated. *Dallis v. Don Cunningham & Assocs.*, 11 F.3d 713, 718 (7th Cir. 1993). The *Dallis* ruling was based upon the fact that the numbers were supplemented with "cryptic notations" and were impossible to calculate without consulting someone with more expertise to calculate the numbers, not simply -- as Automobile and National Union claim – because there were a large number of calculations. *Id.* at 719. The *Dallis* Court held that if judgment, discretion or opinion – rather than calculation – is needed, the amounts are not liquidated or easily calculable. *Id.* The discretion necessary in the *Dallis* case is not, however, necessary in the case before this Court.

Finally, Automobile and National Union claim that Knoll should receive no prejudgment

interest on the money that they had the duty to provide to the settlement fund because this settlement fund was allegedly in an interest bearing account, and common sense and logic (albeit no caselaw) dictate that Knoll should not be able to collect more interest. (R. 135-1, Nat'l Union's Opp'n on Count II at 14; R. 138-1, Automobile's Opp'n on Count II at 10.) Knoll replies that the interest remains for the benefit of the plaintiffs in the underlying suit. (R. 147-1, Pl.'s Reply on Count II at 36.) Regardless, if Automobile and National Union had fulfilled their duty to defend Knoll, Knoll would not have had these expenditures. Rather, Automobile and National Union's money would be in the account. Thus, we conclude that not to grant prejudgment interest here would allow Automobile and National Union to improperly benefit from their breaches.[6]

### D. Damages for Knoll's defense costs will be allocated in a pro-rata fashion.

If damages can be allocated to a particular policy period, they should be applied this way; if not, however, the trial court should apply a pro-rata, time-on-the-risk allocation of damages. *Mo. Pac. R.R. Co. v. Int'l Ins. Co.*, 679 N.E.2d 801, 807 (Ill. App. Ct. 1997). Because the instant case deals with continuous loss over successive policy periods, the losses cannot be allocated to any specific policy period and will be determined on a pro-rata basis, with Automobile paying for three-sixths of defense costs, National Union paying for two-sixths of defense costs and Knoll covering one-sixth of defense costs because of its prior settlement with Royal.

---

[6] Lastly, Automobile and National Union argue that there is a clause in the policy that prevents prejudgment interest collection if the final determination of the underlying suit is not complete. This argument is unpersuasive and irrelevant because Automobile and National Union are estopped from raising policy defenses to coverage. *See, e.g., Elcho*, 708 N.E.2d at 1135.

## E. Conclusion and Damages

Because the policy language regarding the limits of the policy is ambiguous, Knoll's reasonable interpretation will be upheld. Automobile and National Union must indemnify Knoll for the settlement of the underlying *Synthroid Marketing* litigation up to their policy limits of $2 million per policy year, totaling $6 million for Automobile and $4 million for National Union.

Knoll's defense costs were commercially reasonable as a matter of law and Knoll must be indemnified for them. Because we are using a pro-rata allocation, the total defense costs ($39,404,740.00) will be divided by six and assumed by Knoll, Automobile and National Union accordingly:

| | |
|---|---|
| Knoll: | $6,567,457.00 |
| Automobile: | $6,567,457.00 x 3 = $19,702,371.00 |
| National Union | $6,567,457.00 x 2 = $13,134,914.00 |

In order to make whole the victim of a breach of contract, Automobile and National Union must pay prejudgment interest in the statutory amount beginning from the day the money was due and continuing until July 16, 2002, the date of this Court's order.[7] Therefore,

---

[7] Figures for prejudgment interest are adopted from the calculations presented by Knoll as determined by Deloitte and Touche. (R. 147-1, Pl.'s Reply on Count II at 41.) These calculations only include the prejudgment interest on the policy limits and the defense costs through January 31, 2002. Because the Court concludes that prejudgment interest should be paid up until the date of the Court's order – July 16, 2002 – we order that the prejudgment interest for the February 1, 2002 to July 16, 2002 period be calculated in the same manner as calculated by Deloitte and Touche in the original calculations. (*Id.*; R. 121-1, Pl.'s Mot. for Summ. J. on Count II, Ex. C.) This additional prejudgment interest shall be added to the prejudgment interest amounts already calculated by Deloitte and Touche and shall constitute the total amount of prejudgment interest due. Finally, although the total defense costs number in this opinion is drawn directly from the Deloitte and Touche documentation, any negligible difference in the pro-rata defense cost numbers is due to our rounding to the nearest dollar.

Automobile must pay Knoll prejudgment interest of $1,232,877.00 on the policy limits of $6 million through January 31, 2002, plus the prejudgment interest due from the February 1, 2002 to July 16, 2002 period. Furthermore, Automobile must pay prejudgment interest of $2,998,146.00 on the defense costs through January 31, 2002, plus the prejudgment interest due from the February 1, 2002 to July 16, 2002 period. National Union must pay Knoll prejudgment interest of $821,918.00 on the policy limits of $4 million through January 31, 2002, plus the prejudgment interest due from the February 1, 2002 to July 16, 2002 period. Furthermore, National Union must pay prejudgment interest of $1,998,764.00 on the defense costs through January 31, 2002, plus the prejudgment interest due from the February 1, 2002 to July 16, 2002 period. Consequently, the total award to Knoll from Automobile is $29,933,394.00, plus the prejudgment interest due on the policy limits of $6 million and the defense costs from the February 1, 2002 to July 16, 2002 period, and the total award to Knoll from National Union is $19,955,596.00, plus the prejudgment interest due on the policy limits of $4 million and the defense costs from the February 1, 2002 to July 16, 2002 period.

## II. Count II – Section 155 of the Illinois Insurance Code

Knoll also requests a statutory penalty award and additional attorney fees pursuant to Section 155 of the Illinois Insurance Code. Section 155 provides in pertinent part:

> (1) In any action by or against a company wherein there is in issue the liability of the company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees or other costs, plus an amount not to exceed any one of the following amounts:
>   (a) 25% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
>   (b) $25,000;

(c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

*See* 215 ILCS 5/155.  By providing this extra-contractual remedy, the legislature recognized that a contractual remedy may not always be sufficient in a failure-to-pay case. *See Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 901 (Ill. 1996); *Buckner v. Causey*, 724 N.E.2d 95, 103 (Ill. App. Ct. 1999).  It is clear, however, that Section 155 applies only against insurers who act vexatiously and unreasonably in delaying or denying a claim, and that wrongful denial of coverage by itself is not enough. *Citizens First Nat'l Bank v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000); *Bernstein v. Genesis Ins. Co.*, 90 F. Supp. 2d 932, 939-40 (N.D. Ill. 2000); *Mobil Oil Corp. v. Md. Cas. Co.*, 681 N.E. 2d 552, 558 (Ill. App. Ct. 1997).

Whether an insurer's conduct is vexatious and unreasonable is a factual issue best left to the discretion of the finder of fact. *Boyd v. United Farm Mut. Reinsurance Co.*, 596 N.E.2d 1344, 1349 (Ill. App. Ct. 1992). *See also Bernstein*, 90 F. Supp. 2d at 940 (stating that "[a]lthough the question of what constitutes vexatious and unreasonable conduct is a fact-specific inquiry, the final evaluation of the insurer's conduct is made by the court").  In determining whether an insurer's conduct is vexatious and unreasonable, courts must look at the totality of the circumstances. *Smith v. Equitable Life Assur. Soc. of U.S.*, 67 F.3d 611, 618 (7th Cir. 1995). Some courts have suggested certain factors to be examined, including the insurer's attitude, whether the insured was forced to file suit to recover and whether the insured was deprived of the use of its property. *See, e.g., Mobil Oil*, 681 N.E.2d at 558.  The law, however, is well-settled by the Illinois Supreme Court that where a bona fide dispute concerning coverage exists, the insurer's actions in denying or delaying coverage are not vexatious and unreasonable and that

16

sanctions and costs are therefore not appropriate. *See Citizens*, 220 F.3d at 1110; *Matsushita Elec. Corp. of Am. v. Home Indem. Co.*, 907 F. Supp. 1193, 1200 (N.D. Ill. 1995); *State Farm Mut. Auto. Ins. Co. v. Smith*, 757 N.E.2d 881, 887 (Ill. 2001).

The definition of bona fide is "[r]eal, genuine, and not feigned." *McGee v. State Farm Fire and Cas. Co.*, 734 N.E.2d 144, 153 (Ill. App. Ct. 2000) (quoting Black's Law Dictionary 177 (6th ed. 1990)). An insurer may in good faith entertain a difference of opinion regarding policy coverage, and no penalty should be assigned unless this conduct was without reasonable cause. *Morris v. Auto-Owners Ins. Co.*, 606 N.E.2d 1299, 1305 (Ill. App. Ct. 1993). Additionally, a difference of opinion is not rendered unreasonable simply because judgment was later adverse to the insurer. *Id. See also Citizens*, 200 F.3d at 1110 (vacating Section 155 fees and costs); *Bernstein*, 90 F. Supp. 2d at 940 (finding the defendant's legal position to be reasonable and denying the issuance of Section 155 sanctions and fees).

We find that Automobile and National Union presented a bona fide dispute as to coverage, that their subsequent conduct was not vexatious or unreasonable and that they are not liable for Section 155 sanctions. We have previously decided that Automobile and National Union had a duty to defend Knoll in the underlying *Synthroid Marketing* litigation, and that they breached this duty. *Knoll I*, 152 F. Supp. 2d at 1029. Thereafter, Knoll settled the litigation for over $100 million without Automobile and National Union's assistance. As a result of their breach, Automobile and National Union are estopped from denying coverage and have a duty to indemnify Knoll for this settlement up to their policy limits for each policy year. *Id. Knoll II*, 167 F. Supp. 2d at 1004. *See also Chandler*, 702 N.E.2d at 640. Moreover, we decided in this opinion that Automobile and National Union must indemnify Knoll for costs associated with

17

defending the underlying litigation, in the amount of $32,837,285.00. *See supra* Analysis,

Section I(E). Additional sanctions, penalties and fees, however, are both unnecessary to the

attainment of justice and inappropriate as a matter of law where Automobile and National

Union's conduct was not vexatious or unreasonable.

Automobile and National Union presented a bona fide coverage dispute because they took

a "reasonable legal position on an unsettled issue of law." *See Citizens*, 200 F.3d at 1110. They

originally presented two coverage defenses, both involving cases of first impression: (1) whether

coverage was proper under the advertising injury portion of the policy when the plaintiffs were

not the subject of the acts of defamation; and (2) whether the policies were transferable and

assignable, despite the clause in the policy that said they were not. We stated that the first

defense to coverage was a reasonable one. *See Knoll I*, 152 F. Supp. 2d at 1037. This ruling

implies that the defenses were bona fide and that the disputes were real and genuine. Next, we

recognized that the second issue was a novel one under Illinois law, indicating that it was

reasonable to take Defendant Insurers' position. *See id.* at 1038. Furthermore, similar cases

outside of this jurisdiction were decided in favor of Defendant Insurers, which also indicates that

their coverage positions were at the very least reasonable. *See e.g., Microsoft Corp. v. Zurich

Am. Ins. Co.*, No. C00-521P, 2001 WL 765871 (W.D. Wash. 2001); *QSP, Inc. v. Aetna Cas. Sur.

Co.*, 773 A.2d 906 (Conn. 2001).

Knoll insists that because Automobile and National Union failed to defend or seek

declaratory judgment to determine that there was no duty to defend, they are liable under Section

155. The law in Illinois, however, does not support this proposition. *See Citizens*, 200 F.3d at

1110 (finding that the breach of a duty to defend coupled with the failure to file a motion for

18

declaratory judgment does not, without more, justify Section 155 sanctions because relief under Section 155 requires that the insurer's behavior be willful and without reasonable cause, and that the conduct is not unreasonable and vexatious if there is a bona fide dispute concerning the scope and application of coverage); *Ill. Tool Works, Inc. v. Home Indem. Co.,* 998 F. Supp. 868, 874 (N.D. Ill. 1998) (finding that a failure to file a declaratory judgment estopped the insurer from relying on later policy defenses, but Section 155 sanctions were not warranted); *Int'l Ins. Co. v. Rollprint Packaging Prods., Inc.,* 728 N.E.2d 680, 695 (Ill. App. Ct. 2000) (stating that "[i]t is well settled in Illinois that an insured may not recover attorney fees and costs for bringing a declaratory judgment action against an insurer unless there is a showing of vexatious conduct on the part of the insurer"). *But see Elcho,* 708 N.E.2d at 1139-40 (in this case, unlike the instant case before the Court, the defendant failed to introduce evidence as to how the defense qualified as bona fide); *Korte Constr. Co. v. Am. States Ins.,* 750 N.E.2d 764, 768-69 (Ill. App. Ct. 2001) (affirming the trial court's decision that there was no bona fide coverage dispute).

Finally, Knoll's claim – that allowing a bona fide dispute to defeat Section 155 sanctions would enable any frivolous defense to eliminate the possibility of recovering these statutory awards – is misplaced. First, as we have made very clear, Automobile and National Union denied coverage with a position that was recognized by this Court as being reasonable and not frivolous. Second, the defense must be bona fide, which by definition requires that it be more than frivolous. *See McGee,* 734 N.E.2d at 153 (stating that the definition of bona fide is "[r]eal, actual, genuine, and not feigned") (quoting Black's Law Dictionary 177 (6th ed. 1990)).

Because Automobile and National Union presented a bona fide coverage dispute, we find that their subsequent delays were not vexatious and unreasonable. Additionally, we believe that

Knoll has been made whole for Automobile and National Union's breaches of contract through the awards issued under Count II. For these reasons, we grant Automobile and National Union's motion for summary judgment on Count III and deny Knoll's motions for summary judgment on this count.

## CONCLUSION

For the foregoing reasons, Knoll's motion for summary judgment on Count II of the complaint is granted, (R. 121-1), Automobile and National Union's motion for summary judgment on Count III of the complaint is granted, (R. 122-1), and Knoll's motions for summary judgment on Count III are denied, (R. 119-1, against National Union; R. 120-1, against Automobile). The Clerk of the Court is directed to enter final judgment in this case pursuant to Federal Rule of Civil Procedure 58 in favor of Plaintiff Knoll and against Defendants Automobile and National Union in the amount of $49,888,990.00 plus prejudgment interest due on their respective insurance policy limits and pro-rata share of the defense costs from February 1, 2002 to July 16, 2002, the date of this Court's final order in this case.

ENTERED:

**Judge Ruben Castillo**
**United States District Court**

**Dated: July 16, 2002**